Arthur A. CORRY, Plaintiff,

v.

CFM MAJESTIC INC., et al., Defendants.

Civil Action No. 98–407–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 13, 1998.

Michael W. Robinson, Michael Ciatti, Venable, Baetjer & Howard LLP, McLean, VA, Paul F. Strain, David J. Heubeck, Venable, Baetjer & Howard LLP, Baltimore, MD, for Plaintiff.

Regis E. Slutter, George A. Hovanec, Jr., David M. Schlitz, Burns, Doane, Swecker & Mathis, LLP, Alexandria, VA, Michael H. Baniak, Harold V. Johnson, Michael E. Milz, Frank C. Nicholas, Brinks Hofer Gilson & Lione, Chicago, IL, for Defendants.

**MEMORANDUM OPINION**

ELLIS, District Judge.

In this diversity action, plaintiff, a UK citizen domiciled in the state of Florida, is a patentee who sues a licensee and its subsidiaries,[1] with principal places of business in Mississauga, Ontario, and Huntington, Indiana, for breach of contract, patent infringement, misappropriation of trade secrets and breach of confidences. So constituted, this suit could not have been brought in this district, as it is not a permissible venue; none of the CFM entities reside in the Eastern District of Virginia, and none of the events giving rise to the claim occurred here.[2] To remedy this, plaintiff added a claim for patent infringement against one of the CFM entities' distributors, Thulman Eastern Corporation ("Thulman"), which has its principal place of business in Annapolis Junction, Maryland, and a place of business within this district in Chantilly, Virginia.

At issue before the Court is whether to transfer the entire action to the Northern District of Indiana, or, in the alternative, to grant defendants' motion to sever and stay the action as to codefendant Thulman, and then to transfer the main action against the CFM entities to the Northern District of Indiana. For the reasons that follow: (1) transfer of the entire action to Indiana is inappropriate because there is no jurisdiction over Thulman in that state; (2) severance and stay of the patent infringement claim against Thulman is warranted given that resolution of the claims against the CFM entities may dispose of the claim against Thulman; and (3) transfer of the remaining claims against the CFM entities to Indiana is appropriate on the basis of an assessment of the factors pertinent to transfer under 28 U.S.C. § 1404(a).

**I**

In April 1992, plaintiff, an inventor, and CFM Inc. entered into a contract (the "1992

---

1. The licensee, CFM Inc., and its subsidiaries, which include CFM Majestic Inc., The CFM Majestic Products Co., The Majestic Company, and CFM–USA, Inc., are referred to collectively as "CFM entities."

2. *See* 28 U.S.C. § 1391(a) (Venue in a diversity case is proper in the district "where ... any defendant resides, if all defendants reside in the same State," or in the "district in which a substantial part of the events ... giving rise to the claim occurred....").

Agreement") whereby plaintiff agreed to disclose his proprietary technology to CFM Inc., and to allow CFM Inc. to use that technology to manufacture gas fireplaces and gas fireplace components. Since 1992, CFM Inc. has manufactured and sold products incorporating this technology throughout the United States and Canada. Under the 1992 Agreement, CFM Inc. agreed to pay plaintiff: (1) a minimum monthly royalty of $2,500, which amount would be credited against any additional royalties due; (2) a five percent royalty on all products manufactured and sold by CFM Inc. using plaintiff's technology; (3) and a five percent improvement royalty on all products manufactured or sold by CFM Inc. using plaintiff's "improvements." Soon after signing the 1992 Agreement, plaintiff began making a number of improvements to his technology, many of which the CFM entities have used. Among the most recent of these is an improvement that relates to molding technology and that is covered by U.S. Patent No. 5,700,409 ("the '409 Patent"). On November 30, 1992, plaintiff and CFM Inc. entered into a second agreement (the "In–House Mold Making Agreement"), whereby plaintiff agreed to divulge to CFM Inc. additional mold manufacturing technology.

On August 1, 1996, plaintiff and CFM Inc. entered into a Deed of Assignment (the "Amendment") that amended the 1992 Agreement by granting CFM Inc. the right to assign plaintiff's licensed technology to CFM affiliates. The Amendment provided that all new licensees would be subject to the 1992 Agreement and would pay all royalties to plaintiff. The current record does not disclose whether the two agreements and the Amendment were signed in Indiana or Canada, although it is certain that none was signed in Virginia. Shortly after signing the Amendment, CFM Inc. assigned plaintiff's technology to its various subsidiaries.

The financial significance of the business agreements between plaintiff and CFM Inc. is readily apparent. Since the 1992 Agreement, the CFM entities have allegedly sold at least $175,000,000 in gas fireplace products made using plaintiff's licensed technology. Significantly, the CFM entities manufacture many of these products at a plant in Huntington, Indiana. Also significant is the fact that the CFM entities sell their products nationwide through approximately one thousand dealers, one of which is Thulman.

Thulman is the nation's largest distributor of fireplace products. It has sold over $1,000,000 of fireplace products manufactured by the CFM entities, some of which were manufactured using plaintiff's licensed technology. The record does not disclose the quantity of products sold by Thulman that were manufactured using plaintiff's technology. Nor is it known whether Thulman sells more products made using plaintiff's technology than any of the other one thousand CFM entity dealers.

Plaintiff alleges that since December 1, 1997, the CFM entities have refused to pay plaintiff the minimum $2,500 monthly royalty. Moreover, plaintiff claims, the CFM entities have never paid either the five percent royalty for use of plaintiff's technology or the five percent improvement royalty. As a result, on January 8, 1998, plaintiff sent the CFM entities notice that they were in breach of the 1992 Agreement. Approximately two months later, plaintiff formally terminated the 1992 Agreement, pursuant to Paragraph 17 of that agreement, which provides that if a breach by CFM Inc. is not cured within fourteen days after receipt of written notice, plaintiff may terminate the Agreement. Paragraph 7 of the 1992 Agreement also provides that CFM Inc. must cease using plaintiff's licensed technology upon termination of the Agreement.

On March 25, 1998, plaintiff filed this action alleging three counts against the CFM entities, and one count against Thulman. The first count, solely against the CFM entities, alleges breach of contract on the grounds that the CFM entities have refused to pay (i) the minimum monthly royalty of $2,500 since December 1, 1997, (ii) the five percent Royalty for use of plaintiff's technology since May 1, 1993, and (iii) the five percent improvement royalty since May 1, 1993. The second count alleges infringement of the '409 patent by both the CFM entities and Thulman, and claims that the CFM entities' infringement is willful, wan-

ton, and deliberate. The third count alleges misappropriation of trade secrets and breach of confidences solely by the CFM entities.

The CFM entities now move to transfer the entire action to Indiana, or in the alternative to sever and stay the action as to Thulman, and then to transfer the remaining, main action between plaintiff and the CFM entities to the Northern District of Indiana.[3] Plaintiff contends that the entire action cannot be transferred to Indiana because there is no personal jurisdiction over Thulman in that state. Defendants disagree, but argue in the alternative that if Thulman cannot be sued in Indiana, then the patent infringement claim against Thulman should be severed and stayed in this district, thereby allowing the remaining claims against the CFM entities to be transferred to Indiana pursuant to 28 U.S.C. § 1404(a) for the convenience of the witnesses and the parties and in the interest of justice. In response, plaintiff argues that severance is inappropriate and that, in any event, an assessment of the relevant § 1404(a) factors weighs against transfer of the claims against the CFM entities.

## II

■ A motion to transfer will only be granted if the case "might have been brought" in the transferee district. *See* 28 U.S.C. § 1404(a). In other words, transfer is possible only if venue and personal jurisdiction are proper in the transferee forum. And, importantly, these requirements cannot be waived. *See Hoffman v. Blaski*, 363 U.S. 335, 343–344, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) (denying transfer despite defendant's willingness to waive jurisdiction and venue objections to transferee forum).[4] Given these principles, the threshold issue is wheth-

er plaintiff's entire suit can be brought in the Northern District of Indiana because, if so, the motion to sever and stay becomes moot.

Personal jurisdiction comes in two varieties—specific and general. Specific jurisdiction exists when the claim in issue arises from the defendant's contacts with the forum state,[5] whereas general jurisdiction depends on a defendant's contacts with the forum state unrelated to the claim in issue, but those contacts must be "continuous and systematic." *Helicopteros*, 466 U.S. at 415, 104 S.Ct. 1868 (1984) (relying on *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446–47, 72 S.Ct. 413, 96 L.Ed. 485 (1952)). Specific jurisdiction is not at issue here; the parties do not dispute that there is no specific jurisdiction over Thulman in Indiana, as none of the alleged infringing acts by Thulman occurred in Indiana. But the parties vigorously dispute whether Thulman's contacts with the Majestic Products Company in Huntington, Indiana, satisfy the requirements for general jurisdiction.

■ The threshold for satisfying the requirements for general jurisdiction is substantially greater than that for specific jurisdiction. *See* 16 James Wm. Moore et al., Moore's Federal Practice § 108.40 (3d ed.1997) (citing *Helicopteros*, 466 U.S. at 414–15, 104 S.Ct. 1868). Typically, courts assert general jurisdiction only over nonresidents who are essentially domiciled within the forum state. *See id.* at § 108.41[3] ("The threshold for 'continuous and systematic' contact usually requires at least an office in the forum state."). In contrast to specific jurisdiction, where a single contact related to the cause of action may suffice to confer

---

3. Originally, defendants moved only to sever and stay as to Thulman, and then to transfer the action as to the CFM entities. Following oral argument, however, defendants expanded their motion to include a transfer of the entire action to the Northern District of Indiana, arguing, in support thereof, that Thulman, as well as the CFM entities, could be sued in that district.

4. As the *Hoffman* opinion makes clear, to hold otherwise would impermissibly confer on a defendant a unilateral power to defeat a plaintiff's venue choice by seeking transfer to a forum

where the action could not originally have been filed. *See Hoffman*, 363 U.S. at 343–44, 80 S.Ct. 1084.

5. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (n. 8), 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (1984); *Simpson v. Quality Oil Co., Inc.*, 723 F.Supp. 382, 388 (S.D.Ind. 1989) (holding that specific jurisdiction does not exist in Indiana unless the contacts with the forum are "substantively related" to the cause of action).

jurisdiction,[6] general jurisdiction requires far more substantial contact. *See id.* at § 108.41[2]. Thus, mere purchasing within the state and related, incidental contacts are not sufficient to support general jurisdiction, nor, indeed, are an agent's contacts that are related to regular transactions within the state.

■ Measured by this standard, Thulman's incidental contacts fall short of the threshold for satisfying general jurisdiction. Those contacts, stemming from the relationship with the Majestic Products Company plant in Huntington, Indiana, include (1) traveling to the plant for the purpose of negotiating terms, receiving technical training, attending quarterly meetings, and inspecting and buying products, and (2) maintaining an agent in Indiana who distributes promotional material and negotiates terms. While these contacts would be more than sufficient in the specific jurisdiction context, the settled case law confirms they do not confer general jurisdiction. In this circuit, for example, maintaining a sales force and holding district meetings in the forum at least three times a year are "not the type of 'continuous corporate operation' that affects the determination of whether general jurisdiction exists." *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1200 (4th Cir.1993). Likewise, the Supreme Court in *Helicopteros* deemed a number of incidental contacts insufficient for general jurisdiction, including sending officers to the forum for a negotiating session, accepting checks drawn from a forum bank, and sending personnel to the forum to be trained. *See Helicopteros,* 466 U.S. at 417–19, 104 S.Ct. 1868. Moreover, the Ninth Circuit has held that advertising in the forum state, mailing brochures and paying commissions to travel agents in the forum, and selling vacation cruises to residents of the forum are insufficient for general jurisdiction. *See Shute v. Carnival Cruise Lines,* 897 F.2d 377, 381 (9th Cir.1990), *rev'd on other grounds,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). And, the same is true for a foreign corporation's sales and marketing efforts in the forum state, including solicitation of orders, promotion of products to potential customers through the mail and through showroom displays, and attendance at trade shows and sales meetings. *See Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240, 1242–43 (9th Cir.1984). The Southern District of Indiana offered apposite guidance as well, when it held that "'mere purchases, even if occurring at regular intervals, are not enough to warrant ... in personam jurisdiction.'" *Simpson,* 723 F.Supp. at 390 (quoting *Helicopteros,* 466 U.S. at 418, 104 S.Ct. 1868). With respect to sales agents, the Northern District of Indiana held that maintaining an agent in-state is not a sufficient basis for asserting personal jurisdiction. *See L.H. Carbide Corp. v. Piece Maker Co.,* 852 F.Supp. 1425, 1436 (N.D.Ind. 1994); *accord Charlesworth v. Marco Mfg. Co.,* 878 F.Supp. 1196, 1201–02 (N.D.Ind. 1995). In sum, the foregoing case law makes unmistakably clear that Thulman's contacts with Indiana fall short of establishing a basis for general jurisdiction. From this, it follows that the entire case is not eligible for transfer to Indiana.

### III

Given that the action as a whole cannot be transferred to the Northern District of Indiana, the question then presented is whether plaintiff's claim against Thulman may be severed from the claims against the CFM entities so that the latter claims may be transferred to Indiana.[7]

■ Analysis properly begins with recognition of the principle that when venue or personal jurisdiction in a transferee district is not proper for a defendant who is only indirectly connected to the main claims, the transferor court may sever the claims as to that defendant and transfer the remaining claims to the more convenient forum pursuant to § 1404(a). *See, e.g., Leesona Corp. v. Cotwool Mfg. Corp.,* 204 F.Supp. 139 (W.D.S.C.), *appeal dismissed,* 308 F.2d 895

---

6. *See* Rule 4.4(A), Ind. St. Tr. R. P.

7. There is no dispute that there is both general and specific jurisdiction over the CFM entities in Indiana.

(4th Cir.1962).[8] The rationale for this procedure is that courts should sever peripheral claims where the "administration of justice would be materially advanced." *See Wyndham Associates,* 398 F.2d at 618–19. Without the remedy of severance, courts would be powerless to prevent a plaintiff from manipulating the system by joining a peripherally connected defendant to the main action for the sole purpose of "accentuating the burdens of trial upon a defendant who otherwise would have been entitled to a § 1404(a) transfer." *Mobil Oil,* 334 F.Supp. at 122; *see also Wyndham Associates,* 398 F.2d at 618–19. Of course, severance is not appropriate in this context unless (1) the claim to be severed is peripheral to the remaining claims; (2) the adjudication of the remaining claims is potentially dispositive of the severed claim; and (3) the transfer of the remaining claims is warranted under § 1404(a). In these circumstances, severance coupled with transfer serves the interest of justice by securing "the just, speedy, and inexpensive determination of . . . [the] action." Rule 1, Fed.R.Civ.P.

■ The instant facts fit well under this principle: (1) plaintiff's claim against Thulman is peripheral to his various claims against the CFM entities; (2) adjudication of the claims against the CFM entities may well dispose of the claim against Thulman;[9] and

(3) transfer of the plaintiff's claims against the CFM entities is appropriate under § 1401(a).[10]

Plaintiff argues, unpersuasively, that *Magnavox Co. v. APF Electronics, Inc.,* 496 F.Supp. 29, 35 (N.D.Ill.1980), counsels that severance is only available in patent infringement "customer suit cases." Closely read, *Magnavox* is no bar to severance here. There, the court denied severance of a claim against a distributor that was central, not peripheral. Moreover, nothing in *Magnavox* warrants the conclusion that a severance and stay order is appropriate only where a defendant is a mere customer; the opinion is silent as to those cases that have permitted severance of claims against entities that were not just customers, but distributors. Indeed, no case has held that severance of claims in this context is appropriate only where the defendant is a mere customer. This is so because what matters in not whether a defendant is a customer or distributor of the alleged infringer, but rather whether the claim against this defendant is peripheral to the main dispute.[11] This point is well-illustrated in *Siemens Aktiengesellschaft v. Sonotone Corp.,* 370 F.Supp. 970, 972 (N.D.Ill.1973), which is closely in point. There, the patentee suing an infringer added a claim against the alleged infringers' distributor. The court

**8.** *See also Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1518–19 (10th Cir.1991); *Carver v. Knox County, Tenn.,* 887 F.2d 1287 (6th Cir.1989), *cert. denied,* 495 U.S. 919, 110 S.Ct. 1949, 109 L.Ed.2d 311 (1990); *Toro Co. v. Alsop,* 565 F.2d 998, 1000–01 (8th Cir.1977), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1579, 55 L.Ed.2d 802 (1978); *Wyndham Associates v. Bintliff,* 398 F.2d 614 (2d Cir.1968), *cert. denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968); *Magee v. Essex–Tec Corp.,* 704 F.Supp. 543, 546 n. 27 (D.Del.1988); *Siemens Aktiengesellschaft v. Sonotone Corp.,* 370 F.Supp. 970 (N.D.Ill.1973); *Ferri v. United Aircraft Corp.,* 357 F.Supp. 814 (D.Conn.1973); *Mobil Oil Corp. v. W.R. Grace & Co.,* 334 F.Supp. 117 (S.D.Tex.1971); *General Elec. Credit Corp. v. James Talcott, Inc.,* 271 F.Supp. 699 (S.D.N.Y.1966); 17 James Wm. Moore et al., Moore's Federal Practice § 111.12[2][a] (3d ed.1997).

**9.** Thulman, by counsel, has stipulated and agreed in this action to be bound by the results of the disposition of the claims against the CFM entities in Indiana. Thus, for example, if the CFM enti-

ties are found to be infringers of plaintiff's patent in the Indiana litigation, Thulman will be bound by that determination here.

**10.** *See infra IV.*

**11.** For example, severance was allowed in *Mobil Oil,* 334 F.Supp. at 123, as to a defendant customer. There, the court's inquiry correctly focused on "the degree of involvement each defendant has in the transactions which form the basis of the plaintiff's cause of action." *Id.; see also Leesona,* 308 F.2d at 898 (severing as to a licensor as well as a customer); *Wyndham Associates,* 398 F.2d 614 (granting motion to sever as to defendants who were not merely customers, grounding analysis on whether administration justice would be advanced); *Burroughs Corp. v. Newark Electronics Corp.,* 317 F.Supp. 191 (N.D.Ill.1970) (severing and staying as to distributor); *Allway Tools, Inc. v. American Safety Razor Co.,* 206 U.S.P.Q. 475 (S.D.Tex. 1979) (severing and staying claims against distributor because it was peripheral to main action).

granted severance because the claim was peripheral. There, as here, the distributor (i) was only secondarily involved, (ii) did not manufacture the alleged infringing device and (iii) would be liable only if the main defendant was found to be infringing the patent. Similarly, in *Leesona*, 308 F.2d at 898, the Fourth Circuit dismissed an appeal of a successful severance motion, finding that the defendant customer "might have been more than an innocent purchaser of [a primary defendant's] accused machines;" but that the relevant fact warranting severance was that the defendant customer was not a principal contestant and did not carry the burden of defending and producing evidence. *Id.*[12]

In summary, severance of plaintiff's claim against Thulman is warranted because that claim is peripheral or secondary to plaintiff's claims against the CFM entities, and because that claim is likely to be resolved by the disposition of the claims against the CFM entities. From this, it follows that in the interests of justice the severed claim against Thulman should be stayed pending disposition of the transferred claims. *See Landis v. North American Co.*, 299 U.S. 248, 254–5, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for the litigants.").

## IV

■ The remaining question at bar is whether plaintiff's main claims against the CFM entities should be transferred to Indiana pursuant to § 1404(a).[13] The principles governing § 1404(a) are well settled; they are conveniently summarized in Annotation, *Questions as to convenience and justice of transfer under forum non conveniens provision of Judicial Code (28 U.S.C. § 1404(a))*, 1 A.L.R.Fed. 15 (1969).[14] These principles, applied here, compel the conclusion that transfer of the CFM action to Indiana is appropriate.[15]

■ The principal factors to be considered in a transfer analysis include plaintiff's choice of venue, witness convenience and access, party convenience, and the interest of justice. *See generally Baylor Heating*, 702 F.Supp. at 1253; *see also Eastern Scientific*, 696 F.Supp. at 180 n. 13 (listing factors). A plaintiff's choice of forum, while usually entitled to substantial weight, is here of little moment because it is neither plaintiff's nor defendants' home forum. *Verosol*, 806 F.Supp. at 592. Moreover, this forum has essentially little or no connection to the operative facts giving rise to the dispute between plaintiff and the CFM entities. Instead, the operative events at the heart of this action involve the use and alleged misuse of plaintiff's technology, chiefly in Indiana, where the CFM entities have their principle place of business. In these circumstances, transfer is typically appropriate. *See* 17 James Wm. Moore et al., Moore's Federal Practice § 111.13[1][d] (3d ed.1997) (noting motions to transfer likely to succeed where action originally filed in district where no operative events occurred). Furthermore, since the cause of action has little or no connection to this forum, it is not surprising that none of

12. *See also Mobil Oil*, 334 F.Supp. at 123 (fact that main defendant's counsel also defends the peripheral defendant, whose only involvement stems from the purchase of allegedly infringing products manufactured by main defendant, is a factor tending to prove peripheral involvement).

13. The moving party bears the burden of showing that transfer to another forum is proper. *See Kraft v. Hoskins*, 311 F.Supp. 1404, 1405 (E.D.Va.1970). Transfer pursuant to § 1404(a) requires "a lesser showing" than dismissal for *forum non conveniens. Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

14. These principles have also been applied in a number of decisions of this Court. *See, e.g.,*

*Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 592–94 (E.D.Va.1992); *Chedid v. Boardwalk Regency Corp.*, 756 F.Supp. 941, 944 (E.D.Va. 1991); *Eastern Scientific Marketing, Inc. v. Tekna–Seal, Inc.*, 696 F.Supp. 173, 179–180 (E.D.Va. 1988); *Board of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F.Supp. 1253, 1255–62 (E.D.Va.1988); *see also Dee–K Enterprises, Inc. v. Heveafil Sdn. Bhd.*, 985 F.Supp. 640, 646 (E.D.Va.1997) (analyzing similar factors for transfer pursuant to § 1406).

15. The parties do not dispute that there is personal jurisdiction over the CFM entities in the Northern District of Indiana and that venue is proper there.

the witnesses are located in Virginia. Indeed, consistent with the fact that the events giving rise to this suit chiefly occurred in Indiana, many of the witnesses are located in or near Indiana.[16] *See Baylor Heating,* 702 F.Supp. at 1258 (discussing convenience of witnesses). Similarly, to the extent that any relevant documents are in the United States, those documents too are located in Indiana. And further, should a plant visit be required in discovery or at trial, the Indiana forum will be more convenient as that is where the Majestic Products Company plant, the site of the disputed activity, is located. *See id.* at 1260 (accessibility of premises for site visits a factor under "interest of justice,").[17]

Thus, well settled § 1404(a) principles as applied to the facts of this case compel the transfer of the claims as to CFM entities.

An appropriate Order will issue.

---

**16.** In showing witness inconvenience, the burden is on the moving party to identify the witnesses expected to testify at trial and the nature of their intended testimony so that a court may assess the materiality of the evidence and the nature of the inconvenience. *See Baylor Heating,* 702 F.Supp. at 1258. Defendants' showing in this regard was not as detailed or thorough as it might have been. Nonetheless, the record as a whole supports the conclusion that the majority of the witnesses are located in or near Huntington, Indiana, consistent with the fact that the alleged infringing activities chiefly occurred there. Further, the record also supports the conclusion that those CFM witnesses who are located in Canada travel frequently to Huntington, Indiana, making Indiana a more convenient forum than Virginia, even for those witnesses.

**17.** Plaintiff's claims of inconvenience do not outweigh these considerations. Even if cases generally proceed to trial faster in this Court than in Indiana, as plaintiff argues, this consideration is not given great weight, where, as here, the other factors counsel heavily in favor of transfer. *See Mobil Oil,* 334 F.Supp. at 128 n. 10 (noting that even if transfer would result in prejudicial delays, such inconvenience would not "sway the balance of justice against transfer" where other factors weigh heavily toward transfer). Further, plaintiff's claim regarding greatly increased inconvenience in traveling from Florida to Indiana rather than to Virginia is unpersuasive.