**LG ELECTRONICS INC., Plaintiff,**

v.

**ADVANCE CREATIVE COMPUTER CORP., DTK Computer Inc., and DTK Computer Inc. of New Jersey, Defendants.**

**No. CIV. A. 00–986–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 26, 2001.

Nathan Wayne McCutcheon, Morgan, Lewis & Backus, Washington, D.C., for Plaintiff.

Brandt Gerard Cordeli, Robins, Kaplan, Miller & Ciresi, Washington, D.C., for Defendants.

## MEMORANDUM OPINION AND ORDER

LEE, District Judge.

THIS matter is before the Court on Defendant DTK Computer Inc. and DTK Computer Inc. of New Jersey's Motion to Transfer Action. The issue before the Court is whether the Court should transfer venue of this case from the Eastern District of Virginia to either the Northern District of California or the District of New Jersey pursuant to 28 U.S.C.A. § 1404(a) because the substantive patent claim has no connection with Virginia. Plaintiff LG Electronics is a Korean corporation that holds patents in computer apparatus designs and components. Plaintiff brought this case for patent infringement against a manufacturer based in Taiwan, its wholly-owned subsidiary based in California, and the California corporation's wholly-owned subsidiary, based in New Jersey. This Court heard arguments in open court on December 1, 2000. Upon consideration of the submissions and oral argument, and for the reasons stated herein, the Defendant's Motion to Transfer Action is GRANTED.

The Court holds that Defendants have met the requirements under 28 U.S.C.A. §§ 1400(b), 1404(a) for transfer of the claims against the main corporation and its California subsidiary to the Northern District of California. Plaintiff's patent infringement suit against these defendants is proper in the Northern District of California because its claims against them could have been brought there initially. Defendants have established that the Northern District of California would have personal jurisdiction over the main parent corporation and the California-based subsidiary because the main parent is an alien corporation and because the California corporation has sufficient minimum contacts with the Northern District of California. However, jurisdiction over the New Jersey subsidiary would not be proper in the Northern District. Yet, the claims against the New Jersey subsidiary are appropriately severable from the claims against its codefendants because the claims against the New Jersey corporation are peripheral to the main claim. Therefore, the Court holds that the New Jersey corporation shall be severed and the remaining claims shall be transferred to the Northern District of California.

## I. BACKGROUND

Plaintiff LG Electronics Inc. ("LGE") is a Korean corporation with its principal place of business in Seoul Korea. LGE owns by assignment all rights, titles, and interest in and to United States patent numbers for, among other things, computer bus architecture and functions. LGE owns six patents which it claims Defendants infringe upon when they make, ship, and sell specific computer technology: (1) U.S. Patent No. 4,918,379; (2) U.S. Patent No. 4,926,419; (3) U.S. Patent No. 4,939,509; (4) U.S. Patent No. 5,077,641; (5) U.S. Patent No. 5,379,645; and (6) U.S. Patent No. 5,892,733 (collectively "patents-in-suit"). Defendant Advance Creative Computer Group ("Advance") is a corporation organized in Taiwan, with principal manufacturing facilities in Taiwan. Advance manufactures and assembles computer motherboards and systems around the world. Advance maintains sales and distribution offices in a number of countries, including the United States.

Defendant DTK Computer Inc. ("DTK") is a branch office and wholly-owned subsidiary of Advance. DTK is incorporated in California. DTK's main offices are located in Los Angeles, California. DTK has a branch office and wholly-owned subsidiary incorporated under the name of

Defendant DTK Computer Inc. of New Jersey ("DTK–NJ"). Also, DTK has a branch office at 4431–E Brookfield Corporate Drive in Chantilly, Virginia. DTK has thirty-eight (38) full-time employees in the Los Angeles area, and two (2) full-time employees in the Chantilly area. DTK's Virginia office services federal accounts, and does not carry the full DTK product line. DTK's California office markets and sells its products all over the country, including the area encompassed by the Northern District of California.

Defendant DTK–NJ is a branch office of DTK and is incorporated in New Jersey. DTK–NJ has offices in Piscataway, New Jersey. DTK–NJ has seven (7) full-time employees in its Piscataway office.

On June 15, 2000, LGE filed a patent infringement action in this district against Defendants pursuant to the United States patent laws codified in 35 U.S.C.A. § 1, *et seq.* LGE alleges in Count I of its Complaint that Advance has infringed, and continues to infringe, on one or more claims of the patents-in-suit by making, selling, offering to sell, using, or importing into the United States computer systems embodying the inventions claimed in the patents-in-suit. In Count II, LGE alleges the same of DTK. In Count III, LGE alleges the same of DTK–NJ. LGE alleges that the infringement by each defendant has been willful.

On the same day that LGE filed this action, LGE also initiated a patent infringement action against Quantex Microsystems, Inc. ("Quantex") in the District of New Jersey. The following day, June 16, 2000, LGE filed another patent infringement action in the District of New Jersey against First International Computer, Inc., First International Computer of America, Inc., and Expert Computer Group Corporation. In the New Jersey actions, LGE alleged patent infringement of the same patents at issue in the case before this Court. LGE has also brought two similar patent infringement suits in this district against Defendants Asustek Computers, et al., and Everex Systems, et al. On December 22, 2000, this Court ordered that those actions be transferred to the Northern District of California. *See LG Electronics, Inc. v. Asustek Computers,* 126 F.Supp.2d 414 (E.D.Va. 2000); *LG Electronics, Inc. v. Everex Systems,* No. Civ. A. 00–984–A (E.D.Va. Dec. 15, 2000). Defendants DTK and DTK–NJ move to have this matter transferred to either the Northern District of California or the District of New Jersey. Alternatively, Defendants request that the Court sever the claims against DTK–NJ and transfer the remaining claims to the Northern District of California.

Defendants argue that under 28 U.S.C.A. § 1404(a) the Northern District of California or the District of New Jersey are more convenient forums for this suit for four reasons. First, neither DTK nor DTK–NJ have significant contact with Virginia. DTK maintains its principal place of business in California, and DTK–NJ maintains its principal place of business in New Jersey. Second, LGE has no significant contact with Virginia. LGE is a Korean corporation with its principal place of business in Seoul Korea. Third, the parent corporation Advance can be sued in any venue and jurisdiction in the United States. Fourth, this suit could have been brought in California against DTK and could be brought against both DTK and DTK–NJ in New Jersey. There are witnesses and documents necessary for trial located in, or closer to, the Northern District of California and the District of New Jersey. Moreover, LGE is likely to join Intel Corporation ("Intel") as a third-party defendant, and Intel's principal place of business is near the Northern District of California.

LGE argues that Defendants have failed to satisfy the threshold statutory requirements for a change of venue to either the Northern District of California or the District of New Jersey. Defendants have not demonstrated that this action "might have been brought" in either of Defendants' preferred jurisdictions. LGE contends that Defendants have not made a showing

that venue and personal jurisdiction would be proper over all three defendants, DTK, DTK–NJ, *and* Advance, in either jurisdiction. Venue and jurisdiction over DTK–NJ is proper in New Jersey, but not the Northern District of California. Neither venue nor jurisdiction are proper for DTK in New Jersey or the Northern District of California. Also, although venue is proper statutorily for Advance in both the District of New Jersey and the Northern District of California, LGE argues that Defendants have not first demonstrated that jurisdiction is proper over Advance in either district.

In addition, LGE makes several arguments supporting its claim that the preferred venue is Virginia. First, LGE's choice of forum is entitled to consideration and favors Virginia because Defendants sell infringing products in Virginia. Second, convenience favors Virginia because LGE retained a Virginia law firm to represent it in patent-related matters. Third, no collection of witnesses or evidence exists in any one state because Defendants sell computer systems nationwide; therefore, no center of gravity exists in California or New Jersey. Even if one did exist, it would be in Virginia because Defendants maintain offices in Virginia, and this is the only jurisdiction in which both DTK and DTK–NJ can be joined as codefendants in a single action. Fourth, transferring the action from Virginia to California may increase the convenience for California-based witnesses, but only at the additional expense and inconvenience of East–Coast-based (not Virginia) witnesses. Finally, LGE argues that Defendants have not provided sufficient detail about its intent to call Intel Corporation, a California-based witness, for the Court to consider this witness in the Court's calculation of the most convenient forum.

## II. ANALYSIS

### A. *Plaintiff's and Defendant's Post Hearing Filings*

■ After the Court held a hearing on DTK and DTK–NJ's motion to transfer venue on December 1, 2000, the parties submitted additional pleadings for the Court's consideration in ruling on the motion. The Court holds that these filings were untimely and shall not be considered by the Court. Defendants filed their motion to transfer this matter on November 16, 2000, noticing a hearing for December 1, 2000. LGE timely filed its responsive brief on November 27, 2000, and DTK and DTK–NJ filed their rebuttal on November 30, 2000. Pursuant to Local Rule 7(E)(1), the last permissible day to file rebuttal papers was November 30, 2000. *See* LOCAL R. E.D. VA. 7(E)(1) (stating that party has eleven (11) days to file responsive brief and supporting documents, and moving party may file rebuttal brief within three (3) days). On December 4, 2000, DTK and DTK–NJ filed a Declaration of Albert Chang, Esquire in support of their reply to LGE's opposition to the motion to transfer venue. DTK and DTK–NJ also filed a Declaration of B. Gerard Cordelli, Esquire for the same purpose. The parties were not permitted to file further briefs or any written communications with the Court without obtaining leave of the Court. *See* LOCAL R. E.D. VA. 7(E)(1). DTK and DTK–NJ did not obtain leave of the Court before filing their supplemental declarations. Moreover, the Court was provided sufficient information in the initial pleadings and oral argument to decide the defendants' motion. Therefore, the Court shall not consider DTK and DTK–NJ's supplemental submissions.

In response to DTK and DTK–NJ's unauthorized submissions, LGE filed on December 6, 2000 a Motion for Leave to File Plaintiff's Surreply in further opposition to the defendants' motion to transfer. LGE accompanied the motion for leave to file with the Surreply. DTK and DTK–NJ then filed a Response to Plaintiff's Surreply, accompanied by a motion for leave to file the response. As noted, the parties provided the Court with sufficient informa-

tion in their initial submissions and arguments. The filing deadlines established by the local rules are meant to prevent the kind of "add-on" filing that the parties have engaged in here. It is the intent behind the rules that parties file complete motions and accompanying documentation and that parties not make supplemental arguments or reassertions upon the whim of the parties. In accordance with the local rules, the Court will evaluate the arguments of DTK, DTK–NJ, and LGE upon the timely-filed submissions of the parties and their oral arguments.

### B. Transfer of Claims Under 28 U.S.C.A. § 1404

■ The United States Code provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a). The decision whether to transfer an action under § 1404(a) is within the sound discretion of the Court. *See Southern Ry. Co. v. Madden,* 235 F.2d 198, 201 (4th Cir.1956); *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.,* 83 F.Supp.2d 689, 696 (E.D.Va.2000); *GTE Wireless, Inc. v. Qualcomm, Inc.,* 71 F.Supp.2d 517, 518 (E.D.Va.1999). Defendants assert that this Court could transfer LGE's claims against it to the Northern District of California or to the District of New Jersey. However, Defendants express a preference for an alternative remedy. Defendants request that this Court sever Defendant DTK–NJ and transfer the cause of action against Defendant DTK to the Northern District of California.[1] The Court holds that transfer of this case is appropriate pursuant to Defendants' preference of severance of DTK–NJ and

transfer to the Northern District of California.

■ Upon consideration of Defendants' motion to transfer venue, this Court must make two inquiries: (1) whether LGE's claims might have been brought in the Northern District of California or the District of New Jersey, and (2) whether the interest of justice and the convenience of the parties justify transfer to those districts. *See, e.g., Corry v. CFM Majestic Inc.,* 16 F.Supp.2d 660, 663, 666 (E.D.Va. 1998). Under the first prong of the Court's inquiry, the Court has two factors to consider. In order to demonstrate that an action could have been brought in a transferee district, a movant must demonstrate that: (1) venue would have been proper in the transferee district, and (2) the transferee court could exercise personal jurisdiction over all of the defendants. *See, e.g., Shutte v. Armco Steel Corp.,* 431 F.2d 22, 24 (3rd Cir.1970). With respect to the Northern District of California, Defendant DTK–NJ fails both aspects of the might-have-been-brought test; however, Defendants DTK and Advance satisfy both factors.

### C. The Claims Against DTK–NJ

#### 1. Transfer of DTK–NJ to the Northern District of California

The Court cannot transfer DTK–NJ to the Northern District of California because California courts cannot exercise personal jurisdiction over DTK–NJ, and venue is not appropriate there. The special venue provision for patent-infringement actions is found in § 1400(b):

(b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts

---

1. In its initial Motion to Transfer Action, Defendants moved the Court to transfer both DTK and DTK–NJ to either New Jersey or the Northern District of California. However, in its Reply to LGE's motion in opposition to the motion to transfer, Defendants expressed a preference that DTK–NJ's case be severed from that of DTK and that DTK alone be transferred to California. (Def. Reply Mem. to Pl. Opp'n to Mot. to Transfer Venue at 7.) Notwithstanding, Defendants did not abandon their motion to transfer this case to New Jersey.

of infringement and has a regular and established place of business.

28 U.S.C.A. § 1400(b). Notably, § 1400(b) does not contain a definition for "residence." However, § 1391 provides in part:

· For purposes of venue under this chapter [chapter 87 of Title 28], a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

28 U.S.C.A. § 1391(c). Because Chapter 87 of the Code includes § 1400(b), the residence definition found in § 1391(c) applies to § 1400(b). See Regents of the University of California v. Eli Lilly and Co., 734 F.Supp. 911, 912–13 (N.D.Cal. 1990). Therefore, if a corporation "resides" in a district within the meaning of § 1391(c), venue is proper in that district within the meaning of § 1400(b). See id.; see also 28 U.S.C.A. § 1391, Commentary on 1988 and 1990 Revisions of Section 1391, Subdivision (c) (citing VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574 (Fed.Cir.1990)), cert. denied 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991) (concluding that 1988 amendments invited as an additional venue in patent cases-to that offered by the "exclusive" patent venue provisions of § 1400(b)—the venue offered by amended subsection 1391(c)).

■ In defining "residence," § 1391(c) does not make any reference to the district in which the corporation is "incorporated" or "licensed to do business" See 28 U.S.C.A. § 1391(c); 15 CHARLES A. WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, § 3811 (2d ed.1986, Supp.2000). Consequently, personal jurisdiction over a corporation is not proper in the state as a whole merely because the corporation is incorporated in the state. See 28 U.S.C.A. § 1391(c); 15 CHARLES A. WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3811. Therefore, the fact that DTK is incorporated in California,

and any inferences that may be drawn about DTK–NJ's contacts with California due to DTK's incorporation there, are not relevant. Instead, in determining whether a corporation is subject to personal jurisdiction in any district of a state, courts must examine whether personal jurisdiction would be proper in the judicial district based on the corporation's contacts with that district. In essence, under § 1400(b), having incorporated the general venue provisions of § 1391(c), the tests for venue and personal jurisdiction are interchangeable for corporations. See Bicicletas Windsor, S.A. v. Bicycle Corp. of America, 783 F.Supp. 781, 786 n. 4 (S.D.N.Y.1992). DTK–NJ does not reside in the Northern District of California within the meaning of the venue statutes.

■ DTK–NJ does not have sufficient contacts with the Northern District of California for venue or jurisdiction to be proper there. Under the long-established International Shoe test, personal jurisdiction over a party is proper if the party has sufficient minimum contacts with the forum. International Shoe Co. v. Washington, 326 U.S. 310, 318–20, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Defendants have not alleged that DTK–NJ has any significant contact with California. DTK–NJ has employees in New Jersey, and has its principal place of business in New Jersey. DTK–NJ has no employees located outside of New Jersey. (Def. Reply to Pl. Mem. In Opp'n to Mot. to Transfer, Decl. of Alice Lin ¶ 3.) Although DTK–NJ receives its products for resale from DTK (located in California), see id. ¶ 4, this is not sufficient to establish the minimum contacts described in International Shoe, see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473–74, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Under Burger King Corp., the fact that DTK directs its products to DTK–NJ is evidence of DTK establishing contacts with New Jersey as opposed to DTK–NJ establishing sufficient minimum contacts with California. 471 U.S. at 472, 105 S.Ct. 2174 (holding that minimum contacts exist

if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities); *see also Asahi Metal Indus. v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (stating that establishing marketing channels for the product in the forum state may indicate an intent on the part of the defendant to serve that forum). Because personal jurisdiction is not proper over DTK–NJ in the Northern District of California, neither is venue.

■ The impropriety of venue and jurisdiction act as an absolute bar to the transfer of LGE's claims against DTK–NJ to the Northern District of California. DTK–NJ cannot avoid the jurisdiction statutory requirement for transfer of venue by consenting to jurisdiction in California where jurisdiction is otherwise improper. *See Corry*, 16 F.Supp.2d at 663 (stating that § 1404 requirements of personal jurisdiction cannot be waived); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir.1991) ("1404(a) does not allow a court to transfer a suit to a district which lacks personal jurisdiction over the defendants, even if they consent to suit there."); *Hoffman v. Blaski*, 363 U.S. 335, 343–44, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) (denying transfer despite defendant's willingness to waive challenges to jurisdiction and venue). Because personal jurisdiction over DTK–NJ is not proper, the cause of action against DTK–NJ could not have been brought there within the meaning of the transfer statute. *See* 28 U.S.C.A. § 1404(a). Therefore, Defendants' motion to transfer venue to the Northern District of California as to Defendant DTK–NJ is denied.

### 2. *Severance of DTK–NJ's Claims*

■ When jurisdiction in a transferee district is not proper for a defendant who is only indirectly connected to the main claims, the transferor court may sever the claims as to that defendant, and transfer the remaining claims to a more convenient district pursuant to § 1404(a). *See Corry*, 16 F.Supp.2d at 664. Such action is appropriate only when: (1) the severed claim is peripheral to the remaining claims; (2) adjudication of the remaining claims potentially disposes of the severed claim; and (3) 28 U.S.C.A. § 1404(a) warrants transfer of the remaining claims. *See id.* at 665. This case satisfies all three criteria.

### a. *Peripheral Nature of Claims*

■ LGE directs its substantive claim for patent infringement· at Advance and DTK, who manufacture computer systems incorporating bus architecture and functions which allegedly infringed upon LGE's patents. DTK–NJ is an alleged reseller of the products manufactured by Advance and DTK. (Def. Reply to Pl. Opp'n to Mot. to Transfer, Lin Decl. ¶ 4.)

A patent infringement claim against a distributor of infringing products is peripheral to a claim against the manufacturer. *See, e.g., Corry*, 16 F.Supp.2d at 665–66; *Siemens Aktiengesellschaft v. Sonotone Corp.*, 370 F.Supp. 970, 972 (N.D.Ill. 1973). In *Corry*, the court held that a distributor's involvement was peripheral to the case because the distributor was secondarily involved, did not manufacture the alleged infringing device, and would be liable only if the manufacturer was liable. *See Corry*, 16 F.Supp.2d at 665. Unlike *Corry*, in this case, DTK–NJ is a reseller as opposed to a distributor. Nonetheless, the persuasive reasoning in *Corry* supports a finding that a reseller's claim is peripheral to a claim against the manufacturer. Under *Corry*, DTK–NJ is only secondarily involved as a reseller of Advance and DTK products. DTK–NJ is not alleged to be a manufacturer of the alleged infringing products. Moreover, DTK–NJ would only incur liability for selling the infringing products if the Court finds that the manufacturer infringed LGE's patent. *See Intel Corp. v. ULSI System Technology Inc.*, 995 F.2d 1566, 27 U.S.P.Q.2d 1136, 1138–39

(Fed.Cir.1993). Thus, under *Corry,* LGE's claims against DTK–NJ are peripheral.

The thrust of this case further demonstrates that LGE's claims against DTK–NJ are peripheral to the central issues of the lawsuit. The object of the lawsuit is to secure LGE's intellectual property rights and to enjoin the manufacturing, use, and sale of products in derogation of LGE's patent rights. Ultimately, the infringement claim against the manufacturer is more likely to restore contested property rights nationwide than securing an injunction enjoining a merchant from selling infringing products from existing inventory. Therefore, LGE's claims against DTK–NJ, as a reseller, are peripheral to the main patent infringement claims against Advance and DTK, as the manufacturers of the infringing products.

### b. *Outcome of Adjudication of Manufacturer's Claim*

Adjudication of LGE's patent infringement claim against Advance or DTK will dispose of any claims against DTK–NJ. As a reseller of the infringing products, DTK–NJ is liable only if a court were to find Advance or DTK liable. *See generally Corry,* 16 F.Supp.2d at 665; *Siemens Aktiengesellschaft,* 370 F.Supp. at 972. If the Court finds Advance or DTK liable, and LGE collects royalties from Advance or DTK, then LGE cannot in turn collect royalties from the entities to whom Advance and DTK sold the products. *See Intel Corp.,* 995 F.2d 1566, 27 U.S.P.Q.2d at 1138–39 (holding that a patentee can collect only one royalty from a patent infringement). On the other hand, if the Court holds that Advance and DTK did not infringe LGE's patent, LGE has no case against DTK–NJ for reselling such products. Adjudication of Advance's and DTK's claim will dispose of the claims against DTK–NJ as a reseller of the products. DTK–NJ's presence as a party neither adds nor detracts from LGE's patent infringement claim against Advance and DTK.

### c. *Transfer of the Remaining Claims*

As will be detailed below, it is appropriate under 28 U.S.C.A. § 1404(a) to transfer the claims against Advance and DTK to the Northern District of California.

### D. *Transfer of DTK to the Northern District of California*

#### 1. *Where the Action "Might Have Been Brought"*

■ As stated above, a transfer of venue is proper in the interest of justice and for the convenience of the parties to a jurisdiction where an action "might have been brought". *See* 28 U.S.C.A. § 1404(a). In order to demonstrate that an action "might have been brought" in a transferee district, a movant must demonstrate both the propriety of venue in the transferee district and jurisdiction over all of the defendants. *See, e.g., Shutte,* 431 F.2d at 24. DTK's motion for transfer of venue to the Northern District of California succeeds because both venue and the exercise of personal jurisdiction over DTK would have been proper in the Northern District of California.

■ As previously noted, the venue provision for patent-infringement actions states that a civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business. *See* 28 U.S.C.A. § 1400(b). The Northern District of California is a proper venue for the claims against DTK under the first portion of § 1400(b), indicating proper venue where a defendant resides.

LGE argues that venue is not proper in the Northern District of California because DTK is incorporated and has its principal place of business in the Central District of California; however, DTK's contacts with the Northern District are sufficient such that DTK is deemed to "reside" in the

Northern District. Section 1391(c) provides in full:

> (c) For the purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. *In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state,* and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C.A. § 1391(c) (emphasis added). Under the language of the statute, although DTK is incorporated in California, venue is not proper in all of the judicial districts in California, only those within which state-like personal jurisdiction would be proper. *See id.* Personal jurisdiction comes in two varieties: specific and general. *See, e.g., Corry,* 16 F.Supp.2d at 663. Both types are properly exercised over DTK in the Central District of California. General jurisdiction exists over resident defendants with their principal place of business in the jurisdiction. *See Cognitronics Imaging Sys.,* 83 F.Supp.2d at 693 (finding that the resident corporation with its principal place of business in the jurisdiction would "clearly" be subject to personal jurisdiction). General jurisdiction is present because DTK had substantial contact with the Central District unrelated to the claim in issue. DTK's regular and established place of business is in Los Angeles, California. (Pl. Opp'n to Mot. to Transfer at 11.) Los Angeles is located in the Central District of California. *See* 28 U.S.C.A. § 84(c). "Specific jurisdiction exists when the claim in issue arises from the defendant's contacts with the forum state." *Corry,* 16 F.Supp.2d at 663. DTK assembled and sold computer systems out of its offices in Los Angeles, California. (Def. Reply. To Pl. Opp'n to Mot. to Transfer at 11; Def. Reply, Lin Decl. ¶¶ 6–7.) LGE alleges that DTK's computer systems infringe upon LGE's patents in suit. (Compl.¶ 20.) Therefore, there is specific jurisdiction over DTK in the Central District of California because the claim in issue arises from DTK's contacts with that district. *See Corry,* 16 F.Supp.2d at 663.

Yet, there is also specific jurisdiction over DTK in the Northern District of California. Treating the judicial districts of California like individual states, each district could exercise personal jurisdiction over a defendant as long as the defendant had sufficient minimum contacts with the judicial district. *See* 28 U.S.C.A. § 1391(c); *Cognitronics Imaging Sys.,* 83 F.Supp.2d at 691–92 (stating that venue would be proper in Southern District of California provided that, treating the district as if it were an independent state, the exercise of personal jurisdiction over defendants in the district would not violate due process). To that end, DTK strenuously asserts that it has made "significant sales" of its potentially infringing products to the customers of California. (Reply to Pl. Opp'n to Mot. to Transfer at 3.) DTK also states that its sales area encompasses the Northern District of California, that DTK's sales personnel travel to the Northern District of California on sales calls and customer relations trips, and that DTK advertises in local Northern California media. DTK's assertion that it directs a great deal of marketing and sales toward the Northern District of California is sufficient to establish minimum contacts with the Northern District of California. *See International Shoe Co.,* 326 U.S. 310, 318, 320, 66 S.Ct. 154, 90 L.Ed. 95 (holding that personal jurisdiction is proper if party has sufficient minimum contacts); *Burger King Corp.,* 471 U.S. at 472, 105 S.Ct. 2174 (stating that minimum contacts exist if defendant directs his activities at residents of the forum and the litigation results from

injuries relating to those activities); *Asahi Metal Indus.*, 480 U.S. at 112, 107 S.Ct. 1026 (stating that advertising in the forum or establishing marketing channels for the product in the forum may indicate defendant's intent to serve that forum). In *Cognitronics,* the court found that a number of a corporation's activities amounted to sufficient contact with the forum: the corporation's participation in a trade show in which it exhibited its allegedly infringing products, and at which it distributed advertisements and sales literature regarding the infringing product; the corporation's contract negotiations arising out of its sales pitches at the trade show; and the corporation's entrance into a software evaluation agreement involving the allegedly infringing product with a corporation located in the jurisdiction. 83 F.Supp.2d at 694–95. The *Cognitronics* court found that contacts arising from just two events, the trade show and the contract for software evaluation, warranted the exercise of personal jurisdiction over the defendant. DTK states that it has initiated "numerous" contacts with its customers and potential customers in the Northern District of California. Consequently, if the Northern District were a state, it could properly exercise jurisdiction over DTK under a long-arm statute. Therefore, LGE's claims against DTK "might have been brought" in the Northern District of California. *See* 28 U.S.C.A. § 1404(a).

2. *The Interests of Justice and Convenience*

The interest of justice and convenience of the parties justifies transfer of the claims against DTK to the Northern District of California. In a patent infringement action, "the preferred forum is that which is the center of the accused activity ... 'the trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity

centered around its production.'" *GTE Wireless, Inc.*, 71 F.Supp.2d at 519 (citation omitted). Ultimately, a court must balance certain factors to determine if transfer of venue is appropriate. Factors a court should consider include: (1) the plaintiff's original choice of forum, (2) convenience of the parties and witnesses, and (3) the interest of justice, which encompasses all those factors unrelated to witness and party convenience. *See id.* When a plaintiff chooses a foreign forum, and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to substantial weight. *See Cognitronics Imaging Sys., Inc.*, 83 F.Supp.2d at 696.

The balance of factors weighs in favor of transferring venue to the Northern District of California. First, this Court gives LGE's choice of Virginia as a venue little weight because neither it nor this suit has a substantial relation to Virginia. Second, the convenience of any referenced witnesses and parties weighs in favor of a transfer to the Northern District of California. Specifically, DTK asserts that the majority of officers and employees who are likely to be witnesses are in California. (Def. Mot. to Transfer at 6–7.) DTK further asserts that the vast majority of any potentially relevant documents regarding allegedly infringing activities or sales is in California. (*Id.* at 7.) Moreover, few, if any, relevant witnesses or parties reside in Virginia.[2] Third, the interest of justice favors a grant of a transfer of venue. No documents necessary to defend the action are located in Virginia. (*Id.* at 7.) Also, no manufacturing of the alleged infringing products occurred in Virginia.

Finally, the Northern District of California is familiar with some of the issues present in this suit because it previously rendered a claim construction in one of the patents at issue. *See Oki Elec. Indus. Co.,*

2. The Court is persuaded by DTK's assertion that it is unlikely that DTK's two employees in DTK's Chantilly, Virginia office could contribute substantially to this litigation; the employ-

ees primarily handle contracts to federal customers and do not distribute the full DTK products. (Def. Reply at 3; Def. Reply, Lin Decl. ¶ 5.)

*Ltd. v. LG Semicon Co., Ltd.,* No. 97–20310 SW (N.D.Cal. July 19, 1999). Furthermore, this Court has recently transferred two other actions involving LGE and these patents-in-suit to the Northern District of California. *See LG Electronics, Inc. v. Asustek Computers,* 2000 WL 1922322 (E.D.Va. Dec.22, 2000); *LG Electronics, Inc. v. Everex Systems,* No. Civ.A. 00–984–A (E.D.Va. Dec. 15, 2000). In assessing whether transfer would meet the interest of justice, additional factors that courts consider are the pendency of a related action, the court's familiarity with the applicable law, docket conditions, and the ability to join other parties. *See Bd. of Trustees v. Baylor Heating and Air Conditioning,* 702 F.Supp. 1253, 1260 (E.D.Va. 1988). In this case, the Northern District of California is already familiar with the applicable law. This case is very similar to those already in the Northern District of California. Where a party has previously litigated claims involving certain issues in one forum, as LGE has here, "a court in that district will likely be familiar with the facts of the case. As a matter of judicial economy, such familiarity is highly desirable. Thus, this factor supports transferring the case." *Wheeling–Pittsburgh Steel Corp. v. U.S. EPA,* 1999 WL 111459, *4 (E.D.Pa.1999); *see also Job Haines Home for the Aged v. Young,* 936 F.Supp. 223, 233 (D.N.J.1996) (transfer favored where parties and issues are same or similar and another court is already familiar with case). Undoubtedly, the Northern District of California has already invested substantial time and energy in this case; therefore, transfer would promote judicial economy. *See Teknekron Software Systems, Inc. v. Cornell University,* 1993 WL 215024, *8 (N.D.Cal.1993). Therefore, the balance of the factors weighs in favor of transferring this case to the Northern District of California.

### E. *The Claims Against Advance*

The parties are not in agreement about whether Advance is still a party to this suit. LGE filed a request for default against Advance on November 13, 2000. The court entered the requested default on November 14, 2000. Yet, the parties do not agree about whether the default was properly entered against Advance. This Court need not resolve the dispute regarding the default in order to find that the claims against DTK-and against Advance if Advance is still a requisite party to this suit-are properly transferrable to the Northern District of California.

■■■ LGE's claims against Advance may be transferred to the Northern District of California because they "might have been brought" there. *See* 28 U.S.C.A. § 1404(a). First, venue is proper in the Northern District of California because Advance is a foreign corporation. Under 28 U.S.C.A. § 1391(d), aliens may be sued in any judicial district. Second, personal jurisdiction is proper over Advance in the Northern District of California. Defendants DTK and DTK–NJ note that Advance is alleged to be a foreign manufacturer that sells infringing products through its subsidiary, DTK. Personal jurisdiction is proper over Advance in the Northern District of California because Advance is subject to the same jurisdiction as DTK, as a result of Advance's activities conducted through DTK. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564 (Fed.Cir.1994); *Akro Corp. v. Luker,* 45 F.3d 1541, 1545 (Fed.Cir.1995).

A federal court should conduct a two-prong inquiry to determine whether personal jurisdiction exists over a nonresident defendant. First, it must determine whether the assertion of jurisdiction is consistent with the boundaries of constitutional due process. *See Beverly Hills Fan,* 21 F.3d at 1564. Second, it must determine whether the applicable long arm statute confers personal jurisdiction over the defendants. *See id.; Affinity Memory & Micro, Inc. v. K&Q, Inc.,* 20 F.Supp.2d. 948, 951 (E.D.Va.1998) (indicating that a foreign jurisdiction may exercise personal

jurisdiction over a party if permitted by that jurisdiction's long-arm statute).

Jurisdiction over Advance is within the boundaries of constitutional due process because Advance has purposefully directed its activities at residents of the Northern District of California, and the claims against Advance arise out of or relate to Advance's purposefully directed activities. *See Akro Corp.*, 45 F.3d at 1545. A defendant corporation purposefully directs their activities at a state if that corporation delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in such state. *See Beverly Hills Fan Co.*, 21 F.3d at 1565. Advance purposefully directed its activities at the Northern District of California because it incorporated its subsidiary DTK in California. Therefore, due process allows this Court to exercise jurisdiction over Advance.

In addition, California's long-arm statute would permit the exercise of jurisdiction over Advance. California's long-arm statute permits a court to exercise personal jurisdiction over a nonresident defendant to the full extent permissible by the United States Constitution. *See* CAL. CODE. CIV. PROC. § 410.10 (2000). Advance is responsible for DTK's actions in the Northern District of California due to its purposeful availment of the forum through DTK. *See Asahi Metal Indus.*, 480 U.S. at 112, 107 S.Ct. 1026 (stating that advertising in the forum or establishing marketing channels for the product in the forum state may indicate an intent on the part of defendant to serve that forum). As demonstrated above, the Northern District of California has personal jurisdiction over DTK: DTK sends sales representatives into the Northern District of California, advertises in that district's media, makes sales in the that district, and makes customer relations trips into the Northern District of California. (Def. Reply, Lin Decl. ¶¶ 6–7.) Selling, or making offers to sell, infringing products in the forum state is "related to" a claim of patent infringe-

ment significant to satisfy the "arising out of" and "relating to" prong of a due process test. *See 3D Systems, Inc. v. Aarotech Laboratories*, 160 F.3d 1373, 1379 (Fed.Cir.1998). Therefore, Advance's contacts through DTK constitute Advance's placement of products into the stream of commerce with the expectation that such products would be purchased by consumers in the Northern District of California. *See Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. 2174 (stating that minimum contacts exist if defendant directs his activities at residents of the forum and the litigation results from injuries relating to those activities). Consequently, it would be constitutionally permissible for the Northern District of California to exercise jurisdiction over Advance. *See Cognitronics Imaging Sys.*, 83 F.Supp.2d at 692 (stating that due process is satisfied if defendant has minimum contacts with forum state such that maintenance of suit does not offend notions of fair play and substantial justice). Therefore, personal jurisdiction over Advance is proper in the Northern District of California. Particularly, specific jurisdiction over Advance in that district is proper because the claims in issue arise from Advance's contacts with the district through DTK. *See Corry*, 16 F.Supp.2d at 663. Because both personal jurisdiction and venue over Advance are proper in the Northern District of California, this action "might have been brought" there, and transfer of venue is proper. *See* 28 U.S.C.A. § 1404(a). Accordingly, the defendants' request that the Court transfer LGE's claims against Advance and DTK to the Northern District of California is granted.

### III. CONCLUSION

This Court holds that LGE's claims against Advance and DTK will be transferred under 28 U.S.C.A. § 1404(a) because LGE could have brought claims against them in the Northern District of California, and the balance of the factors weighs in favor of a transfer of venue. The claims against DTK–NJ shall be severed from the claims against Advance and

DTK because the claims against DTK–NJ are peripheral to this suit. Accordingly, for the reasons stated above, it is hereby

ORDERED that Defendants' Motion to Transfer Action is GRANTED;

ORDERED that LGE's claims against Defendant DTK–NJ are severed from this case;

ORDERED that LGE's claims against DTK and Advance shall be TRANS-FERRED to the Northern District of California;

ORDERED that LGE's claims against DTK–NJ are STAYED pending the outcome of LGE's adjudication of this case in the Northern District of California. It is

FURTHER ORDERED that Plaintiff LGE's Motion for Leave to File Plaintiff's Surreply in Further Opposition to Motion to Transfer Filed by Defendants DTK and DTK–NJ is DENIED;

ORDERED that DTK and DTK–NJ's Motion for Leave to File a Response to Plaintiff's Surreply in Further Opposition to Transfer Filed by Defendants DTK and DTK–NJ is DENIED.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to counsel of record.