**LG ELECTRONICS INC., Plaintiff,**

**v.**

**FIRST INTERNATIONAL COMPUTER, INC., First International Computer of America, Inc., and Expert Computer Group Corp., Defendants.**

**No. CIV. A. 00–2946(MLC).**

United States District Court,
D. New Jersey.

April 11, 2001.

Robert A. White, Jeffrey L. Eichen, argued, Thomas B. Kenworthy, argued, Morgan, Lewis & Bockius, LLP, Princeton, NJ, for Plaintiff.

Richard J. Sexton, Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, Mount Laurel, NJ, for Defendants First International Computer, Inc. and First International Computer of America, Inc.

John Burlinghame, argued, Squire, Sanders & Dempsey L.L.P., Washington, DC, for Defendants First International Computer, Inc. and First International Computer of America, Inc., pro hoc vice.

Raymond R. Siberine, argued, Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, Roseland, NJ, for Defendant Expert Computer Group, Inc.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court upon (1) the motion of defendants First International Computer, Inc. ("FIC") and First International Computer of America, Inc. ("FICA") to dismiss the claims against them for lack of personal jurisdiction or, in the alternative, to transfer venue to the Northern District of California and (2) the motion of Defendant Expert Computer Group Corp. ("Expert") to dismiss plaintiff's claims against it for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment.[1]

---

**1.** Contrary to statements in plaintiffs' brief in opposition to Expert's motion and statements made by plaintiff's counsel during oral argument, Expert did not move for Rule 11 sanc-

For the reasons expressed below, the Court will (1) deny without prejudice the motion of FIC and FICA to dismiss the claims against them for lack of personal jurisdiction; (2) sever the claims against FIC and FICA from this action and transfer the severed action to the Northern District of California; (3) deny Expert's motion to dismiss or, in the alternative, for summary judgment; and (4) stay the claims against Expert pending disposition of the transferred action.

## BACKGROUND

On July 24, 2000, plaintiff LG Electronics, Inc. ("LGE") filed its Amended Complaint for patent infringement against FIC, FICA, and Expert. LGE claims that FIC, FICA, and Expert have infringed the following five patents that LGE owns by making, selling, offering to sell, using, or importing into the United States infringing products manufactured by FIC: (1) U.S. Patent No. 4,918,645; (2) U.S. Patent No. 4,939,641; (3) U.S. Patent No. 5,077,733; (4) U.S. Patent No. 5,379,379; and (5) U.S. Patent No. 5,892,509 (the "Patents"). (Am.Compl.¶¶ 3–13, 16, 20, 24.) LGE has not yet identified the specific FIC products that allegedly infringe the Patents.

LGE is a Korean corporation with its principal place of business in Seoul, Korea. (Am.Compl.¶ 1.) FIC is a Taiwanese corporation with its principal place of business in Taipei, Taiwan. (Id. ¶ 2.) FIC has no offices outside of Taiwan. (Decl. of David Wang ("Wang Decl.") ¶ 3.) FICA, a subsidiary of FIC, is a California corporation with its principal place of business in Fremont, California. (Id. ¶ 7; Am.Compl. ¶ 3.) Fremont is located in Silicon Valley, which is within the jurisdiction of the Northern District of California. Expert, a reseller of computer goods, is a New Jersey corporation with its principal place of

business in Fairfax, New Jersey. (Am. Compl.¶¶ 5–6.)

FIC designs and sells computer hardware, such as motherboards, desktop computers, and notebook computers. (Wang Decl. ¶ 2.) FIC sells these computer products to distributers throughout the world. (Decl. of Jeffrey L. Eichen, Esq.) ("Eichen Decl." Ex. A: pages printed from FIC's web site at < http://www.fic.com.tw >, Ex. B: pages printed from FICA's web site at < http://www.fica.com >.) FICA specializes in the wholesale distribution of computer hardware, focusing especially on motherboards and "barebones" desktop computers, i.e. computers without preinstalled processors or memory. (See Decl. of Anderson Lien ("Lien Decl.") ¶¶ 2–3; Eichen Decl. Ex. B.) FICA is FIC's wholesale distributor in the United States (Eichen Decl. Exs. A & B) and obtains the bulk of the products it resells from FIC in Taiwan, where FICA takes possession of the products. (Lien Decl. ¶ 3.) FICA distributes these products to resellers throughout the United States. (Eichen Decl. Ex. B.) Three of the resellers listed on FICA's web site have facilities or offices located in New Jersey. (Eichen Decl. ¶ 17, Ex. B, Ex. C: pages from web site of Bell Microproducts, Inc. at < http://www.bellmicro.com >, Ex. D: pages printed from web site of Leadman Electronics USA, Inc. at < http:// www.leadman.com >, Ex. E: pages printed from web site of Tech Data Corporation at < http://www.techdata.com >.) Some retailers with facilities or offices in New Jersey that are not listed as distributors on FICA's web site offer FIC products for sale. (Id. ¶ 18–21, Ex. B, Ex. F: pages printed from web site of Micro Warehouse, Inc. at < http://www2.warehouse.com >, Ex. G: pages from web site of PCwon-

tions. Therefore, the Court will not address this issue in this Memorandum and Order.

ders.com, Inc. at <*http:// www.pcwonders.com* >, Ex. H: pages printed from web site of Expert Computer Group Corp. at <*http://www.expertgroup.com* >, Ex. I: price sheets received from Expert Computer Group Corp.) One of these retailers is Expert. (*Id.* ¶ 21, Exs. H, I.) LGE alleges that for at least some of the FIC motherboards sold, or offered for sale, by Expert, Expert must attach a power supply, memory chips or cards, disk drives, processors, input/output devices and other devices (which are often specified by the end consumer) in order to transform a bare motherboard into a working computer system. (Eichen Decl. ¶ 24.)

FICA admits that it has sold only a very small amount of FIC products to distributors in New Jersey. (Lien Decl. ¶ 7.) FICA claims, however, that (1) all such sales were FOB Fremont; (2) there have been no in-person sales to anyone in New Jersey for more than a year; (3) any sales or shipments into New Jersey have represented no more than 0.2 of one percent of FICA's total revenue, as compared with sales in California, which account for over 47 percent of FICA's sales; (4) FICA has had no sales to Expert for more than a year, when Expert ceased to be one of FICA's customers. (*Id.* ¶¶ 6–7.)

Expert claims that it has never purchased any motherboards or other computer equipment from FIC or FICA. (Decl. of Fu Jung Wang ("Expert Decl.") ¶ 8; Suppl. Decl. of Fu Jung Wang ("Expert Decl. # 2") ¶ 3.) Expert asserts that even though a related corporate entity, Expert Distributing, Inc. ("EDI"), has distributed FIC products in the past, it was only a small distributor of FIC products, it has no existing inventory of FIC manufactured hardware, and it discontinued purchases from FIC and FICA approximately one year ago. (Expert Decl. ¶ 10; Expert Decl. # 2 ¶¶ 4, 6–8.)

FIC and FICA brought a motion to dismiss the claims against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to transfer venue to the Northern District of California pursuant to 28 U.S.C. § 1404(a). Expert moves this court to dismiss the claims against it for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56.

### *DISCUSSION*

■ The Court of Appeals for the Federal Circuit has jurisdiction over appeals from the district court in patent cases. 21 U.S.C. § 1295(a)(1). Thus, decisions of the Federal Circuit on substantive questions of patent law are binding precedent on district courts. *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1574–75 (Fed.Cir.1984). The Federal Circuit applies Third Circuit precedent to routine procedural matters in patent infringement cases arising in the district courts within the Third Circuit. *See id.* The Federal Circuit has found, however, that certain aspects of personal jurisdiction are "intimately related to substantive patent law" and that, consequently, Federal Circuit law, as opposed to Third Circuit law, controls these jurisdictional issues. *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564 (Fed.Cir.1994).

The Court will first discuss Expert's motion. Then the Court will address the motion of FIC and FICA.

I. *Expert's Motion to Dismiss/Summary Judgment*

■ In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6),

the court must "accept as true all the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party." *Rocks v. Phila.*, 868 F.2d 644, 645 (3d Cir.1989). Dismissal is inappropriate unless it clearly appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Robb v. Phila.*, 733 F.2d 286, 290 (3d Cir.1984).

■ "[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). LGE alleges in its Amended Complaint that Expert "has infringed and continues to infringe one or more of the Patents[ ] by making, selling, offering to sell, using, or importing into the United States computer systems embodying the claimed inventions of the Patents[ ], or by contributing thereto or inducing others to do so." (Am.Compl.¶ 24.) Accepting all of the allegations of the Amended Complaint as true, as we must, the Amended Complaint asserts a valid claim against Expert for patent infringement. We conclude, therefore, that dismissal of LGE's claims against Expert is inappropriate. *See Robb*, 733 F.2d at 290.

## II. *Motion for Summary Judgment*

■ Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of showing that there is no genuine

issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial burden, the nonmoving party is required to present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. *See id.* at 324, 106 S.Ct. 2548. In applying these standards, the court must construe the facts in the light most favorable to the party against whom judgment is sought. *See Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 65 (3d Cir.1996). Before entering summary judgment against a party, the court must afford that party "adequate notice and time to present to the district court material relevant to [its] claim in order to demonstrate that there is a genuine issue of material fact that renders summary disposition ... inappropriate." *Liberty Lincoln–Mercury v. Ford Motor Co.*, 134 F.3d 557, 569 (3d Cir.1998) (quoting *Hilfirty v. Shipman,* 91 F.3d 573, 578 (3d Cir.1996)). The Court is required to provide an adequate opportunity for discovery of the material facts. *See id.; Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 183 (3d Cir.1997). The Court finds that plaintiff has not been given an adequate opportunity to conduct discovery of material facts relevant to the issue of whether Expert has purchased any motherboards or other computer products from FIC or FICA. (*See* Pl.'s Br. in Opp'n to Mot. to Dismiss by Def. Expert Computer Group Corp. ("Pl.'s Br. in Opp'n to Expert") at 11–12.) In addition, the facts submitted by LGE in opposition to Expert's motion appear to show that Expert has offered FIC products for sale on its web site. (*See* Eichen Decl. Exs. H & I.) If LGE is able to prove that these FIC products infringe the Patents, LGE's offering of such products for sale might sustain a finding of patent infringement even if Expert did not in fact sell any such infringing products. *See* 35

U.S.C. § 271(a). We conclude, therefore, that LGE should be given an opportunity for discovery of the material facts before the Court considers whether summary judgment against it is appropriate.

III. *Motion of FIC and FICA to Transfer Venue* [2]

■■■■ "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Although this section authorizes the transfer only of an entire action and not of individual claims, the Court is not confined to view the facts as they existed at the time of the filing of the complaint. *See In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 819 (3d Cir. 1982); *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir.1968). Venue defects as to a party whose portion of the action has been severed or settled does not bar transfer of the remainder of the action. *See In re Fine Paper*, 685 F.2d at 819. Thus, when venue or jurisdiction in a transferee district is not proper for a defendant who is only indirectly connected to the main claims, the transferor court may sever the claims as to that defendant and transfer the remaining claims to the more convenient district pursuant to 28 U.S.C. § 1404(a). *See id.; see also Sunbelt Corp. v. Noble, Denton & Assocs.*, 5 F.3d 28, 33–34 (3d Cir.1993); *Wyndham Assocs.*, 398 F.2d at 618–19; *LG Elects., Inc. v. Asustek*, 126 F.Supp.2d 414, 421 (E.D.Va.2000); *Corry v. CFM Majestic Inc.*, 16 F.Supp.2d 660, 664 (E.D.Va.1998); *Indianapolis Motor Speedway Corp. v. Polaris Indus.*, No.

IP99–1190–C–B/S, 2000 WL 777874, *2 (S.D.Ind. June 15, 2000). The rationale for this procedure is that courts should sever peripheral claims when the "administration of justice would be materially advanced." *See, e.g., Corry*, 16 F.Supp.2d at 665 (quoting *Wyndham Assocs.*, 398 F.2d at 618–19). "Without the remedy of severance, courts would be powerless to prevent a plaintiff from manipulating the system by joining a peripherally connected defendant to the main action for the sole purpose of accentuating the burdens of trial upon a defendant who otherwise would have been entitled to a § 1404(a) transfer." *Id.* (quoting *Mobil Oil Corp. v. W.R. Grace & Co.*, 334 F.Supp. 117 (S.D.Tex.1971)); *See also Wyndham Assocs.*, 398 F.2d at 618–19.

■■■■ Pursuant to Federal Rule of Civil Procedure 21, "Any claim against a party may be severed and proceeded with separately." Fed.R.Civ.P. 21. Under the circumstances of this case, severance would be appropriate only if: (1) the severed claims were peripheral to the remaining claims; (2) adjudication of the remaining claims would potentially dispose of the severed claims; and (3) section 1404(a) warrants transfer of the remaining claims. *See Sunbelt Corp.*, 5 F.3d at 33–34; *Wyndham Assocs.*, 398 F.2d at 618; *LG Elecs.*, 126 F.Supp.2d at 421; *Indianapolis Motor Speedway*, 2000 WL 777874, *2; *Corry*, 16 F.Supp.2d at 665. Severance should not be used "if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." *Sunbelt Corp.*,

---

**2.** The Court will not address the issue of personal jurisdiction over FIC and FICA. Instead, the Court will deny that motion without prejudice to the right of FIC and FICA to renew the motion following transfer of the claims against them to the Northern District of Cali-

fornia. *See McTyre v. Broward Gen. Med. Ctr.*, 749 F.Supp. 102, 105 n. 2 (D.N.J.1990) (holding that a court may transfer venue even when it lacks personal jurisdiction over the defendants).

5 F.3d at 33–34. As set forth below, the facts of this case satisfy all three criteria for severance and transfer.

### A. Peripheral Claims

■ LGE's claims against Expert are peripheral to its claims against FIC and FICA. LGE directs its substantive claim for patent infringement at FIC and FICA. (*See* Am.Compl. counts I & II) FIC manufactures and distributes motherboards that allegedly infringe upon the Patents. (*Id.* count I.) FICA is the central distributor of these products in the United States. (*Id.* count II; Eichen Decl. Exs. A & B.) Expert does not manufacture or distribute any infringing products. (Am.Compl. count III.) Instead, it allegedly resells the allegedly infringing products manufactured and distributed by FIC and FICA, either on their own or as part of assembled computer systems, to end users. (*Id.;* Eichen Decl. ¶ 24.)

■ A patent infringement claim against a reseller is peripheral to a claim against the manufacturer and central distributer. *See LG Elecs.,* 126 F.Supp.2d at 422; *Corry,* 16 F.Supp.2d at 665–66. Expert would only be liable for selling the infringing products if a court were to find that FIC and FICA infringed the Patents. *See id.* Thus, LGE's claim against Expert is peripheral to its claims against FIC and FICA.

### B. Potential Disposal of Claims

■ Severance and transfer should not be used "if the defendant over whom juris-diction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." *Sunbelt Corp.,* 5 F.3d at 33–34; *see also Indianapolis Motor Speedway Corp.,* 2000 WL 777874, *3. Severance and transfer is only appropriate if the court's ruling on the issue of infringement by the primary defendants is likely to resolve the issues against the peripherally-involved defendants as well. *See Indianapolis Motor Speedway Corp.,* 2000 WL 777874, *3. Adjudication of the claims against the primary defendants need not guaranty a resolution of the claims against the peripheral defendants; it is enough that such adjudication potentially could resolve the claims against the peripheral defendants while allowing the patent holder to obtain the substance of the relief it seeks. *Id.*

■ Adjudication of LGE's patent infringement claims against FIC and FICA is likely to dispose of any claims against Expert. *See LG Elecs.,* 126 F.Supp.2d at 422. Expert has agreed to be bound by the results of the disposition of the claims against FIC and FICA if those claims are transferred to the Northern District of California.[3] (*See* Letter of Raymond R. Siberine, Esq. dated 2–21–01 at 2.) If a court finds that the Patents are valid and that the allegedly infringing products manufactured by FIC and distributed by FICA infringe the Patents, then Expert will be bound by that determination.[4] *See id.;*

---

**3.** *See Corry,* 16 F.Supp.2d at 665 n. 9 (finding that adjudication of claims against principal defendants may well dispose of claims against peripheral defendant because peripheral defendant agreed to be bound by the results of the disposition of the claims against the principal defendants in the transferee court).

**4.** Expert has agreed to stop selling or offering for sale any products manufactured by FIC that infringe the Patents. (Aff. of Raymond R. Siberine, Esq. ¶¶ 17–33; Expert Decl. # 2 ¶ 9; Tr. of Mot. to Dismiss Hr'g on 1–25–01 at 51–54.) In fact, it appears that the only reason LGE has not settled its claims against Expert is because LGE has refused to identify the specific products manufactured by FIC that allegedly infringe upon the Patents. (*See id.*) Moreover, if LGE were successful in obtaining a complete recovery against FIC and

*Corry*, 16 F.Supp.2d at 665. If, on the other hand, a court finds that the Patents are invalid or that the allegedly infringing products do not infringe the Patents, then Expert cannot be found liable for reselling or offering to resell such products to the public. *See LG Elecs.*, 126 F.Supp.2d at 422; *Corry*, 16 F.Supp.2d at 665. Accordingly, adjudication of LGE's patent infringement claims against FIC and FICA is likely to dispose of any claims against Expert.

### C. *Whether Transfer is Appropriate*

■ As previously stated, section 1404(a) allows a district court to transfer an action to another district where the action might have been brought for the convenience of parties and witnesses and in the interest of justice. *See* 28 U.S.C. § 1404(a). In order to demonstrate that an action "might have been brought" in a transferee district, a movant is ordinarily required to demonstrate both the propriety of venue in the transferee district and jurisdiction over all of the defendants. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir.1970). The moving party also bears the burden of demonstrating that the alternative forum is more appropriate than the present one. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Liggett Group Inc. v. R.J. Reynolds Tobacco Co.*, 102 F.Supp.2d 518, 528–29 (D.N.J.2000). The moving party must present sufficient information on the record to meet this burden of persuasion and to facilitate the court's analysis. *Liggett*, 102 F.Supp.2d at 529.

■ The three section 1404(a) factors that a court must consider when determining whether to transfer a matter are (1) convenience of the parties, (2) convenience of the witnesses, and (3) the interests of justice. 28 U.S.C. § 1404(a); *Jumara*, 55 F.3d at 879. These factors, however, are merely a starting point. In deciding whether to transfer, the courts are to consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by a transfer to a different forum." *Jumara*, 55 F.3d at 879; *Liggett*, 102 F.Supp.2d at 526 (D.N.J.2000); *Tischio v. Bontex, Inc.*, 16 F.Supp.2d 511, 519 (D.N.J.1998).

■ The Third Circuit has articulated various factors that courts should consider when deciding whether to transfer an action, dividing them into private and public interests. *See Jumara*, 55 F.3d at 879. Private interests include: (1) the "plaintiff's forum preference as manifested in the original choice," (2) the "defendant's preference," (3) "whether the claim arose elsewhere," (4) "the convenience of the parties as indicated by their relative physical and financial condition," (5) "the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted). The ease of access to sources of proof, availability of compulsory process over unwilling witnesses, and the possibility of a jury view of the premises, are other private interests courts have considered. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

■ The public interests include: (1) "the enforceability of the judgment," (2) "practical considerations that could make

---

FICA, then LGE would not be able to recover additional damages against Expert. *See LG* *Elecs.*, 126 F.Supp.2d at 422.

the trial easy, expeditious, or inexpensive," (3) "the relative administrative difficulty in the two fora resulting from court congestion," (4) "the local interest in deciding local controversies at home," (5) "the public policies of the fora," and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879–80 (citations omitted).

■■■ The above list of factors is merely a guide, and not all the factors may be relevant or determinative in each case. *See id.; Sandvik v. Continental Ins. Co.*, 724 F.Supp. 303, 307 (D.N.J.1989). The analysis under section 1404(a) is a "flexible" one to be made on the "unique facts" in each case. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249–50, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Liggett*, 102 F.Supp.2d at 527; *Wm. H. McGee & Co., Inc., v. United Arab Shipping Co.*, 6 F.Supp.2d 283, 288 (D.N.J.1997). A determination that transfer is appropriate represents an "exercise[ ] of structured discretion by trial judges appraising the practical inconvenience posed to the litigants and to the court should a particular action be litigated in one forum rather than another." *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 632 (3d Cir.1989) (quoting *Pain v. United Techs. Corp.*, 637 F.2d 775, 781 (D.C.Cir.1980) (alteration in original)); *see also Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 (3d Cir.1973); *Ricoh*, 817 F.Supp. at 480.

### 1. *Venue and Personal Jurisdiction*

As a threshold matter, the Court is required to determine whether the action could have been brought in the Northern District of California.[5] Thus, we must determine whether venue in the Northern District of California is proper and whether FIC and FICA are subject to personal jurisdiction in the Northern District of California. *See Shutte*, 431 F.2d at 24.

In a patent infringement action, proper venue is defined in section 1400(b) and 1391(c) of title 28 of the United States Code, which provide in relevant part as follows:

§ 1400(b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

§ 1391(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

The parties do not dispute that there is personal jurisdiction over FICA in the Northern District of California. FICA resides in California because it is incorporated in California and has its principal place

5. As already discussed, we need not determine whether this Court has personal jurisdiction over FIC and FICA to transfer the claims against them to the Northern District of California. *See supra*, note 2.

of business in the Northern District of California.[6] (*See* Wang Decl. ¶ 7, Am. Compl. ¶ 3.) Therefore, LGE could have brought a claim against FICA in the Northern District of California.

We will now determine whether LGE could also have brought a claim against FIC in the Northern District of California. Although FIC does not reside in California, a court may exercise specific jurisdiction over a nonresident defendant if (1) the assertion of that jurisdiction is consistent with the boundaries of constitutional due process and (2) the applicable state long-arm statute confers personal jurisdiction over the defendant.[7] *See Beverly Hills Fan*, 21 F.3d at 1564. For jurisdictions in which the applicable long-arm statute extends to the fullest reach permitted by the due process clause of the United States Constitution, however, the sole inquiry becomes whether the court's exercise of personal jurisdiction over the defendant is consistent with due process. *Akro Corp. v. Luker*, 45 F.3d 1541, 1544 (Fed. Cir.1995).[8]

The Federal Circuit recognizes that personal jurisdiction over a non-resident defendant is within the confines of due process if (1) that defendant purposefully directs its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) jurisdiction is constitutionally reasonable and fair. *Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1458 (Fed.Cir.1997); *Akro*, 45 F.3d at 1545. As set forth below, jurisdiction over FIC satisfies all three criteria.

### a. *Purposefully Directed Activities*

FIC purposefully directed its activities at California. Under the stream of commerce theory, FIC has minimum contacts with California sufficient to satisfy this prong. A defendant corporation purposefully directs its activities at a state if that corporation delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in such state. *See Beverly Hills Fan*, 21 F.3d at 1565. Forty-seven percent of FICA's sales of FIC products occurs within California. (Lien Decl. ¶ 7.) Regardless of whether FIC delivers its products to FICA in Taiwan or in California, FIC incorporated its subsidiary, FICA, in California for the purpose of distributing its products in the United States, and placed the products into the stream of commerce with the expectation that FICA would resell the products throughout the United States from its headquarters in California.[9] (*See* Lien Decl. ¶¶ 2–3; Wang Decl. ¶ 2; Eichen Decl. Exs. A & B.)

### b. *Relation of Claims to Activities*

LGE's claims relate to FIC's activities directed at California. Selling, or making offers to sell, infringing products

---

6. *See* 28 U.S.C. § 1400(b).

7. The United States Court of Appeals for the Federal Circuit has held that patent actions falling within the appellate jurisdiction are governed by Federal Circuit law with respect to the scope of personal jurisdiction over out-of-state defendants. *See 3D Systems, Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377–78 (Fed.Cir.1998); *Beverly Hills Fan*, 21 F.3d at 1564.

8. California's long-arm statute permits a court to exercise personal jurisdiction over a non-resident defendant to the full extent permissible by the United States Constitution. *See* Cal.Code Civ.Proc.Code § 410.10 (West 2000). Therefore, our inquiry will be limited to whether the exercise of personal jurisdiction over the FIC in California is consistent with due process.

9. *See LG Elecs.*, 126 F.Supp.2d at 420, 423.

in the forum state is related to a claim of patent infringement significant to satisfy the "arising out of" or "relating to" prong of a due process test. *See 3D Sys.,* 160 F.3d at 1379; *LG Elecs.,* 126 F.Supp.2d at 420. FIC sells its allegedly infringing computer products to distributers throughout the world. (*See* Eichen Decl. Ex. A & B.) FICA, which is incorporated in California and has its principal place of business in California, is FIC's wholesale distributor in the United States. (*Id.*) FICA distributes these products to resellers throughout the United States. (*Id.* Ex. B.) Forty-seven percent of FICA's sales of FIC products occurs within California. (Lien Decl. ¶ 7.) Therefore, FIC's contacts with FICA, and thus with California, are sufficiently related to LGE's patent infringement claims because FICA resells FIC's allegedly infringing products in the United States from FICA's California headquarters.

### c. *Fair and Reasonable Exercise of Jurisdiction*

 Jurisdiction over FIC in California is fair and reasonable. When a defendant deliberately engages in significant activities within a state, or has continuing obligations between himself and residents of that state, jurisdiction is reasonable because the defendant has manifestly availed itself of the privilege of conducting business within that jurisdiction. *See Burger King v. Rudzewicz,* 471 U.S. 462, 471–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *LG Elecs.,* 126 F.Supp.2d at 420. It is presumptively reasonable to require FIC to submit to the burdens of litigation in California because its activities are shielded by the benefits and protections of California's laws. *Burger King,* 471 U.S.

at 476, 105 S.Ct. 2174; *LG Elecs.,* 126 F.Supp.2d at 420, 423. For these reasons, the Northern District of California would have proper jurisdiction over FIC in connection with this case.[10]

Having established that the action against FIC and FICA could have been brought in the Northern District of California, we must now weigh the relevant private and public factors to determine whether transfer of venue is appropriate.

### i. *Private Factors*

 A plaintiff's choice of forum is generally accorded great weight in the section 1404(a) analysis and should not be "lightly disturbed." *Jumara,* 55 F.3d at 879; *NCR Credit Corp. v. Ye Seekers Horizon, Inc.,* 17 F.Supp.2d 317, 321 (D.N.J. 1998); *Am. Tel. & Tel. Co. v. MCI Communications Corp.,* 736 F.Supp. 1294, 1305–06 (D.N.J.1990). The rule of deferentially viewing plaintiff's choice of forum is premised on the assumption that a home forum is inherently more convenient than a transferee forum. *See Lony,* 886 F.2d at 633–34. Choice of forum is not decisive, however, and other factors can lessen its weight. *NCR Credit,* 17 F.Supp.2d at 321.

 Plaintiff's choice is accorded less weight when the chosen forum is not the plaintiff's home forum. *Id.* at 321; *see also One World Botanicals v. Gulf Coast Nutritionals,* 987 F.Supp. 317, 326 (D.N.J. 1997) (holding that plaintiff's choice of forum is accorded less deference when plaintiff resides outside forum and key facts of lawsuit occurred outside chosen district). LGE does not reside in New Jersey. Although plaintiff's choice militates against transfer, the weight of that choice is signif-

---

**10.** FIC's contacts are directed primarily to the Northern District of California, where its United States subsidiary, FICA, has its princi-

pal place of business. Thus, venue is proper in the Northern District of California. *See* 28 U.S.C. § 1391(c).

icantly lessened by the fact that LGE does not reside in New Jersey.

■■■■ Another important factor weighing against plaintiff's choice of forum is the location of the operative facts of the litigation. *See Ricoh*, 817 F.Supp. at 481. "When the central facts of the lawsuit occur outside the forum state, a plaintiff's selection of that forum is entitled to less deference." *Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd.*, 847 F.Supp. 1244, 1246 (D.N.J.1994). This is especially true in patent infringement cases. *See Ricoh*, 817 F.Supp. at 481 n. 17 (opining that in patent infringement actions, as general rule, preferred forum is that which is center of gravity of accused activity) (citing cases). The district court ought to be as close as possible to the area of the infringing device and the hub of activity centered around its production. *Id.* (citing *S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F.Supp. 1185, 1188 (N.D.Ill.1983)). Appropriate considerations include the location of a product's development, testing, research and production. *Id.* Also relevant is the place where marketing and sales decisions were made, rather than where the limited sales activity has occurred. *Id.*

■■■■ The center of gravity of the allegedly infringing activity has occurred in either Taiwan or California. All information concerning the development, testing, and research of the accused devises is in Taiwan. (Wang Decl. ¶¶ 3, 9–10.) The accused devices are manufactured in Taiwan. (*Id.* ¶¶ 9–10.) All relevant marketing and sales decisions are made in Taiwan and California. (*See id.;* Lien Decl. ¶¶ 9–10.) None of this activity has occurred in New Jersey. (Wang Decl. ¶¶ 4–5; Lien Decl. ¶¶ 4–5.) In addition, although 47% of FICA's sales of FIC products has oc-

curred within California, only 0.2% of such sales has occurred in New Jersey. (Lien Decl. ¶¶ 6–7.) Thus, this factor heavily favors transfer.

■■■■ Another factor weighing in favor of transfer is the preference of FIC and FICA. FIC and FICA prefer the Northern District of California over the District of New Jersey because FICA is incorporated in and has its principal place of business in the Northern District of California. (Wang Decl. ¶ 7.) In addition, many of FICA's witnesses are located in or near the Northern District of California. (Wang Decl. ¶¶ 9–19; Lien Decl. ¶¶ 9–12.) Moreover, those witnesses that are not located in or near the Northern District of California are located in Taiwan, which is significantly closer to California than it is to New Jersey. (*Id.*) Although this factor in and of itself would not be sufficient to overcome a plaintiff's choice of forum, it does constitute another factor in favor of transfer.

■■■■ The convenience of non-party witnesses is another factor weighing in favor of transfer. FIC and FICA have identified numerous non-party witnesses located in or near the Northern District of California, and have identified the relevant knowledge these witnesses possess and why their testimony may be important. (*See* Wang Decl. ¶¶ 14–19.) These non-party witnesses include employees of Intel Corporation, which is centered in Silicon Valley California; employees of Microsoft Corporation, which is centered in Redmond, Washington, and has facilities in Silicon Valley; employees of Peripheral Component Interconnect Consortium, which is centered in Portland, Oregon; and employees of Via Technologies, Inc., which has an office in Silicon Valley, California.[11] (*See id.*) FIC and FICA expect

---

11. Although FIC and FICA have not identified these witnesses by name, LGE's discovery re-

that testimony from these witnesses will be a necessary part of this lawsuit. (*Id.*) It appears that most of these witnesses would not be subject to compulsory process in this district, but would be subject to compulsory process in the Northern District of California. *See* Fed.R.Civ.P. 45(c)(3); *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839 (amenability of process considered); *Solomon v. Continental Am. Life Ins. Co.,* 472 F.2d 1043, 1047 (3d Cir.1973) (holding that the "amenability of at least seven crucial witnesses to compulsory process in North Carolina and not in New Jersey" weighed in favor of transfer). LGE, on the other hand, has not identified any witnesses who reside in New Jersey, or who would be subject to compulsory process in the District of New Jersey. (*See* Eichen Decl. ¶ 25.) Although some of the witnesses identified by LGE reside in the Northeastern part of the United States (Maine, New Hampshire, Massachusetts, and Illinois) (Eichen Decl. ¶ 25), which would be closer to New Jersey than California, the inconvenience to these witnesses appears to be less than the inconvenience to the witnesses who are located in or around the Northern District of California and in Asia. *See, e.g., Laitram Corp. v. OKI Elec. Indus. Co.,* 1993 WL 330034, 28 U.S.P.Q.2d 1951, 1955 (E.D.La.1993) (opining that if a particular party's witnesses must travel great distances no matter where the action is lodged, then the inconvenience of these witness is of less importance). Accordingly, this factor weighs in favor of transfer.

 The location of documentary proof is to be considered to the extent that the records could not be produced in the alternative forum. *See Jumara,* 55 F.3d at 879. FIC and FICA assert that virtually all of the necessary documents are maintained in California or in Asia, and that the cost of bringing the documents to New Jersey would be substantial. (*See* Wang Decl. ¶ 10, 12; Lien Decl. ¶ 10, 12.) They assert that FIC has tens of thousands of pages of documents concerning the design, development, research, production, and marketing of the allegedly infringing products in Taiwan and that FICA has fifty four-drawer cabinets of documents relating to marketing in California. (*Id.*) LGE, on the other hand, does not allege that any of the documentary evidence is located in New Jersey. There is no indication in the record that it would be more costly to produce the documents, which are located in Asia, in this forum compared with the Northern District of California. There can be no doubt, however, that it would be more costly to produce the documents located in California in this forum as opposed to the Northern District of California. Thus, this factor weighs slightly in favor of transfer.[12]

sponses in a related action, *LG Elecs.,* 126 F.Supp.2d 414, appear to indicate that at least some of these witnesses may be required to testify. (*See, e.g.,* Decl. of Richard J. Sexton, Esq. Ex. H: Pl.'s Answers to Discovery Requests dated 10–30–00, Answer to Interr. 1 & Answer to Request for Admission 1 (implying that LGE will be relying on use of Intel chipsets as part of its infringement analysis).)

12. LGE also identifies as a factor for us to consider the increased financial burden that a transfer will have on LGE because its attorneys would be required to travel to trial and pretrial events and to hire another firm to act as local counsel in the Northern District of California. (*See* Pl.'s Br. in Opp'n at 41–42.) LGE argues that retaining the action in New Jersey would not impose any significant burden on any of the parties because all parties have competent counsel in the area to represent their interests in this matter without having to incur the substantial additional cost of hiring local counsel. (*Id.*) LGE's argument seems somewhat disingenuous because its counsel of record has an office in Los Angeles with more than sixty attorneys. In addition, the convenience of counsel is not a factor that should be considered on a motion to transfer

ii. *Public Factors*

The public interest factor of the local interest in deciding local issues is intertwined with the private interest factor of where the claim arose. The location where the claim arose is a private interest because the location assists the district court in deciding on a convenient forum. *See* 17 *Moore's Federal Practice* § 111.13[1][d][i] (3d ed.2000). The location where the claim arose is also a public interest factor because local judges and juries are preferred arbiters of events in their jurisdiction and community. *See Gulf*, 330 U.S. at 511, 67 S.Ct. 839; 17 *Moore's* § 111.13[1][l]. As we discussed above, the center of gravity of the alleged infringing activity giving rise to this lawsuit occurred primarily in Taiwan and California, making California a more convenient forum than New Jersey. Also weighing in favor of transfer to California is the fact that California judges and juries in the community where these events took place are the preferred arbiters. *Gulf*, 330 U.S. at 511, 67 S.Ct. 839.

Another public interest factor that weighs heavily in favor of transfer is the practical considerations that could make the trial easy, expeditious, or inexpensive. The interests of justice strongly favor transfer of a case to another jurisdiction where a related matter is pending. *See, e.g., Liggett Group*, 102 F.Supp.2d at 536; *Lawrence v. Xerox Corp.*, 56 F.Supp.2d 442, 453–54 (D.N.J.1999); *Ayling v. Travelers Prop. Cas. Corp.*, 1999 WL 994403, *3 (E.D.Pa. Oct. 27, 1999); *Am. Bio Medica Corp. v. Peninsula Drug Analysis Co.*, 1999 WL 615175, *5 (D.Del. Aug. 3, 1999). Three separate related patent infringement actions are currently pending in the Northern District of California:

- LG Electronics, Inc. v. Asustek Computers, Inc.;
- LG Electronics, Inc. v. Everex Systems, Inc.; and
- LG Electronics, Inc. v. DTK Computer, Inc.[13]

LGE commenced each of these actions the same day it commenced this action. These actions also allege infringement of the Patents. In addition, LGE asserts that it has been advised by Everex, a defendant in one of these actions, that it intends to join FIC as a third-party defendant in that case. (*See* Defs.' Reply Br. at 4.) Finally, the Northern District of California is already familiar with at least one of the patents at issue here, U.S. Patent No. 4,918,645. (Wang Decl. ¶ 20 & Ex. B: Claim Construction Order Re: Counterclaim Patents filed 7–19–99 in *OKI Elec. Indus. Co. v. LG Semicon Co.*, 1998 WL 101737 (1998).) The combination of these factors strongly weighs in favor of transfer.[14]

---

venue. *Solomon v. Continental Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir.1973). Moreover, LGE has failed to allege facts relating to the "relative physical and financial condition" among it, FIC, and FICA. *See Jumara*, 55 F.3d at 879. Thus, there is no way to evaluate the appropriate amount of weight to be given to this factor even if we were to consider it.

**13.** Although these actions were originally commenced in the United States District Court for the Eastern District of Virginia, that court subsequently severed and stayed the patent-infringement claims against the local, Virginia-based resellers, finding they were "peripheral" defendants, and transferred the patent-infringement claims against the "principal" defendants to the Northern District of California. *See, e.g., LG Elecs.*, 126 F.Supp.2d 414.

**14.** Although another related action involving the Patents is pending in this Court, the defendant in that action has defaulted. *See LG Elecs. v. Quantex*, Civ. A. No. 00–2925. Therefore, the existence of this action is not a factor to be weighed against transfer.

The last four factors, the enforceability of the judgment, the relative familiarity of the court in question with the applicable law, the public policies of the fora, and the administrative difficulty in the two fora resulting from court congestion,[15] do not favor either New Jersey or California as a location for venue.

Having evaluated each of the private and public factors discussed above, we find that the balance of these factors weighs in favor of transfer. None of the parties or witnesses have any ties to New Jersey, the Northern District of California appears to be the center of gravity of LGE's patent infringement claims, the Northern District of California appears to be a more convenient forum for the parties and a majority of the witnesses, and the Northern District of California already has a number of related cases pending before it and has already construed one of the patents at issue in this litigation. Accordingly, we find the Northern District of California to be a more convenient forum and will grant the motion to transfer.

### CONCLUSION

For the reasons expressed above, the Court will (1) sever the claims against FIC and FICA from this action and transfer the severed action to the Northern District of California; (2) deny as moot the motion

of FIC and FICA to dismiss the claims against them for lack of personal jurisdiction; (3) deny Expert's motion to dismiss or, in the alternative, for summary judgment; and (4) stay the claims against Expert pending disposition of the transferred claims.

---

**15.** LGE asks the Court to take judicial notice of the fact that the docket for this judicial district is less congested than that of the Northern District of California. (Pl.'s Br. in Opp'n at 40–41.) For the twelve month period ending September 30, 1999, the most recent year for which the Court has statistics, there was no significant difference in the congestion of the two district's dockets. *See* 1999 Federal Court Management Statistics (Administrative Office of the U.S. Courts (March 2000)). For the year ending September 30, 1999 in the Northern District of California, the median time in months from filing to disposition in civil cases was nine months and the median time in months from filing to trial

in civil cases was twenty-four months. (*See id.* at 127.) For the same period in the District of New Jersey, the median time in months from filing to disposition in civil cases was seven months and the median time in months from filing to trial in civil cases was twenty-seven months. (*See id.* at 56.) Thus, there is no significant difference in the congestion of dockets of the two districts. *See, e.g., Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.,* 992 F.Supp. 1014, 1020 (N.D.Ill.1998) (opining that in determining which district is more congested, relevant statistics are (i) median months from filing to disposition in district and (ii) median months from filing to trial).